# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Thomas George RAGATZ, Attorney at Law.

Supreme Court

*No. 87–2255–D. Filed October 4, 1988.*

(Also reported in 429 N.W.2d 488.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

The referee recommended that the license of Attorney Thomas G. Ragatz to practice law in Wisconsin be suspended for 60 days as discipline for professional misconduct in having engaged in ex parte

communications with a judge concerning a contested matter pending in that judge's court. The referee also recommended that Attorney Ragatz be required to pay the costs of this proceeding.

We determine that a 60–day suspension of Attorney Ragatz's license to practice law is appropriate discipline for his misconduct in this matter. A lawyer's ex parte communication with a judge intended to affect the outcome of a proceeding and causing significant or potentially significant interference with the outcome of that proceeding constitutes extremely serious misconduct, as it subverts or attempts to subvert the very process in which lawyers serve an essential role in the resolution of disputes.

Attorney Ragatz was licensed to practice law in Wisconsin in 1961 and practices in Madison. He has not previously been the subject of a disciplinary proceeding. The referee is Attorney Cheryl Rosen Weston.

The referee made the following findings of fact, which were largely undisputed. In early 1986, Attorney Ragatz, as a member of the Foley and Lardner law firm, undertook to represent the estate of Marie Swerig in a will contest filed in Dane county circuit court by the law firm of Clifford and Relles on behalf of the decedent's son. Soon thereafter, Attorney Ragatz filed an action, entitled *Bennin v. Swerig,* claiming equitable adjustment with respect to the will contestant's indebtedness to his parents, indebtedness which had been discharged in bankruptcy prior to the commencement of that action. The lawsuit was intended to reduce the amount the son might receive in the event he prevailed in the will contest.

The Clifford and Relles law firm moved to dismiss the equitable adjustment action and have it declared

frivolous, thereby entitling its client to payment of costs and attorney fees. Foley and Lardner agreed to dismiss the action but opposed the motion to hold the action frivolous. Oral argument on the frivolousness issue was made to the court, the Honorable Paulette Siebers presiding, and written briefs were then filed. *Bennin* remained pending in that court when John Aulik succeeded Judge Siebers to the bench. When Judge Aulik took office, the transcript of the oral argument on the frivolousness motion had not yet been prepared, but it was filed sometime during the last two weeks of September, 1986. Pursuant to the court's rule establishing the time period for issuing circuit court decisions, SCR 70.36, *Bennin* was to be decided within 90 days of the date of that filing.

In late October or early November, 1986, Judge Aulik met Attorney Ragatz by chance and in a brief conversation told him that the judge's law clerk had stated to the judge that *Bennin* might indeed be frivolous. Attorney Ragatz responded to the judge's remarks, maintaining that the law clerk was in error and that the action was not frivolous. Opposing counsel was not present during that conversation or thereafter advised that it had occurred.

Shortly after that conversation, Attorney Ragatz received by mail a document "in the form of a proposed decision in the *Bennin* case" indicating a ruling that the lawsuit was frivolous. Attorney Ragatz had not solicited that document and correctly assumed it had been sent by Judge Aulik.[1] Subsequently, on November 7, 1986, Judge Aulik executed a certifi-

---

[1]We considered the judge's conduct in this matter in *Disciplinary Proceedings Against Aulik, 146 Wis. 2d 57, 429 N.W.2d 759 (1988)*.

cation of pending case status, pursuant to SCR 70.36, extending the time for his decision in *Bennin* 90 days.

After Attorney Ragatz ascertained the contents of the document he received from Judge Aulik, he met with Attorney David Reinecke, the attorney in his office who had been assigned to work on *Bennin* under his supervision, and directed him to prepare a response. Attorney Reinecke did so, citing authority and making legal arguments "intended to influence the Court in its decision." Attorney Ragatz reviewed and edited that letter, changing the salutation from "Dear Judge Aulik" to "Dear Jack" and signing it "Tom." Attorney Ragatz also added a paragraph stating that it was unlikely either side would appeal the judge's ruling on the frivolousness issue and pointed out that argument in the will contest was scheduled for November 26, 1986, and a ruling in that case from the bench or shortly after argument was possible. He wrote that, if successful in the will contest, he believed he could reach a compromise in *Bennin*. Attorney Ragatz then had the letter marked "Confidential" and sent to Judge Aulik, but he did not provide opposing counsel with a copy of it. Moreover, Attorney Ragatz did not intend that opposing counsel be aware of the existence or contents of it.

The related will contest was tried to another branch of Dane county circuit court and in late November, 1986, the court ruled in favor of the will proponent, Foley and Lardner's client. By late January, 1987, two matters remained unresolved: the frivolousness issue in Judge Aulik's court and a determination of costs and fees in the will contest. The latter issue was scheduled for hearing in February, 1987.

In late January or early February, 1987, Attorney Reinecke initiated contact with the Clifford and Relles law firm attempting to resolve all pending litigation between the parties. By February 4, 1987 Attorney Ragatz himself attempted to pursue settlement negotiations in those matters. At no time during conversations with that law firm did Attorney Ragatz or Attorney Reinecke disclose the fact that ex parte communications had taken place with the judge or that Attorney Ragatz had submitted legal arguments to the judge in response to the "proposed decision" favoring Attorney Clifford's client.

On February 5, 1987, Attorney Clifford examined the court file in *Bennin* and in it discovered the letter Attorney Ragatz had sent to the judge in November setting forth legal arguments on the frivolousness issue. He asked the judge's clerk for a copy of the letter, but the clerk stated that she could not provide him one without the judge's authorization, as it had been marked "Confidential." The clerk took the letter to the judge, who was elsewhere in the courthouse, relaying Attorney Clifford's request for a copy. Judge Aulik retained the letter, and when the clerk returned to Attorney Clifford without either the letter or a copy, Attorney Clifford went to see the judge. When Attorney Clifford found him, the judge was engaged in a telephone conversation. Unbeknownst to Attorney Clifford, Judge Aulik was telling Attorney Ragatz that Attorney Clifford had found the letter. However, the judge did not tell Attorney Clifford to whom he had been talking or the subject of the conversation.

Attorney Clifford then returned to his office without having obtained a copy of the Ragatz letter, whereupon he called Attorney Ragatz. During the ensuing conversation, Attorney Ragatz did not reveal

the fact that the judge had called him and he denied familiarity with the letter, stating that he would attempt to find a copy of it. The next morning, Attorney Ragatz telephoned the judge and suggested that he schedule a conference with counsel. That request was not made through the judge's clerk, nor was it made in a telephone conference call with Attorney Clifford participating. Judge Aulik told Attorney Ragatz in that conversation that he had already determined to schedule such a conference for that morning.

That conference was held in the judge's chambers, at which time Judge Aulik signed and distributed copies of his decision on the frivolousness issue, which was in favor of Attorney Clifford's client. During the conference, Attorney Clifford renewed his request for a copy of the Ragatz letter, but Judge Aulik stated that he was no longer in possession of it and Attorney Ragatz said that he had not yet been able to locate a copy.

During the conference in the judge's chambers, both Attorney Ragatz and Judge Aulik urged Attorney Clifford to settle the pending litigation, as Judge Aulik's decision had not awarded a specific amount of attorney fees to the Clifford firm and that issue remained to be addressed. Attorney Clifford stated that he was not comfortable settling the matter until he had received a copy of the Ragatz letter. A file copy was later found in Attorney Ragatz's office and a copy of it was sent to Attorney Clifford.

In making a recommendation for discipline in this matter, the referee found that Attorney Ragatz cooperated with the Board of Attorneys Professional Responsibility throughout the investigation and consistently acknowledged his responsibility for sending

the letter to the judge. However, the referee found prior statements he had given in the course of the investigation, as well as in the investigation of the Judicial Commission into the judge's conduct, "misleading in that he understated his awareness of the contents of the Aulik proposed decision, his involvement in the preparation and editing of the letter to Judge Aulik, and the fact that the failure to provide a copy of the letter to opposing counsel at the time it was sent was a conscious, deliberate act, as opposed to an oversight." Finally, the referee noted that throughout his legal career Attorney Ragatz has had a reputation for integrity and trustworthiness.

Contrary to the Board's contention, the referee did not find clear and convincing evidence that Attorney Ragatz participated in a scheme to settle *Bennin* at a specific time in order to use the ex parte communication he had had with the judge to his client's advantage. However, the referee concluded that a determination of that issue was not "significant" to her disciplinary recommendation. The referee considered Attorney Ragatz's letter to be "an advocacy piece" which "could have no possible intended purpose but to influence the outcome of litigation." In the referee's view, whether Attorney Ragatz was successful in having the judge decide the matter in favor of his client or in using his knowledge of the proposed decision to gain a favorable settlement did not alter the wrongfulness of the conduct. While on the basis of the character testimony presented on Attorney Ragatz's behalf the referee expressed a willingness to believe that his misconduct was "out of character," she considered it serious nonetheless.

The referee concluded that, by directing the preparation of the letter on the frivolousness issue

and causing it to be sent to the judge without disclosing its contents to opposing counsel, Attorney Ragatz violated SCR 20.44(2), which prohibits a lawyer from engaging in ex parte communications on the merits of a case with a judge before whom that case is pending, with exceptions not here relevant.

We adopt the referee's findings of fact and conclusions of law and accept the recommendation for discipline. It is significant that in neither of the two instances of ex parte communication did Attorney Ragatz bring up the subject of the pending litigation. Rather, he was responding to communication from the judge: in one instance, to remarks concerning the judge's law clerk's conclusion on the frivolousness issue; in the other, to a proposed decision on that issue the judge had sent him, apparently without having sent a copy to opposing counsel. Nevertheless, the proscription against ex parte communications between a lawyer and a judge on the merits of a pending adversary proceeding applied here.[2]

Attorney Ragatz had the duty to either refrain from participating in those communications or provide a copy of his response to opposing counsel. His refusal to do so was a serious breach of his professional responsibilities. He permitted ex parte information from the judge on a contested issue and additional ex parte argument to the judge on that issue to influence the outcome of litigation. In so doing, he acted contrary to the objectives of our court system, a system in which he, as attorney, serves an integral role. In effect, his actions denied one party to that

[2]We had occasion to remind lawyers and judges of that proscription in *In re Marriage of Gould v. Gould,* 116 Wis. 2d 493, 505–06 n. 5, 342 N.W.2d 426 (1984).

litigation a full and fair hearing on the merits of the controversy.

As it violated a fundamental principle of our justice system, Attorney Ragatz's misconduct warrants severe discipline—a suspension of his license to practice law. In determining the appropriate length of that suspension, we take into account the fact that Attorney Ragatz did not initiate the ex parte communications but, rather, responded to communications initiated by the judge and the fact that this is the first time Attorney Ragatz has been the subject of a disciplinary proceeding.

IT IS ORDERED that the license of Thomas G. Ragatz to practice law in Wisconsin is suspended for a period of 60 days, commencing November 7, 1988.

IT IS FURTHER ORDERED that within 60 days of the date of this order Thomas G. Ragatz pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing of his inability to pay the costs within that time, the license of Thomas G. Ragatz to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Thomas G. Ragatz comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.